IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD WARNELL<br>*Plaintiff* | § § § § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-1200 |
| | § § | |
| BP PRODUCTS, NORTH AMERICA<br>*Defendant* | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF DONALD WARNELL, hereinafter "Warnell" brings this suit against and complains of BP PRODUCTS, NORTH AMERICA, hereinafter "BP N.A.", Defendant, as follows:

### A.

### PARTIES

1. Plaintiff, DONALD WARNELL, is an individual, residing in the State of Texas.

2. Defendant, BP PRODUCTS, NORTH AMERICA, is a Delaware corporation with a Registered Agent for service in the State of Texas having been identified as CT Corporation with the address given below.

## A.

Said Defendant lists their registered agent as C. T. Corporation Systems, 350 N. St. Paul Street, Dallas, Texas 75201.

3. Said Defendant maintains a base of operations in Galveston and Harris Counties, Texas.

## B.

## JURISDICTION AND VENUE

This action arises under the laws of the United States, specifically (1) Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C.§ 621 et seq.; (2) Discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Acts of 1991, 42 U.S.C. § 2000e et seq; (3) 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Accordingly, this Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1331.

## C.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6. Plaintiff Warnell timely filed with the Equal Employment Opportunity Commission, hereinafter "EEOC", on July 25, 2012, and supplemental filing May 31, 2013, a charge against BP N.A., with the actions of Defendant including and/or

contributing to race and age discrimination, retaliation and the subjection of Plaintiff Warnell to a hostile work environment. Plaintiff received a notice of right to sue from the EEOC within 90 days of filing this complaint. A copy of said notice, is attached as **Exhibit "A"**.

### D.

### STATEMENT OF FACTS

7. BP is a corporation with more than 500 employees.

8. Plaintiff DONALD WARNELL is a 52 year old African American male who began his employ with BP in June 2000 as a warehouseman worked his way up to supervisory level. Mr. Warnell worked for BP until BP was purchased by Marathon, effective January 31, 2013.

9. Mr. Warnell, like many African American BP employees, was never equally rewarded, recognized, compensated for his diligent work performance by BP compared to his white counterparts.

10. BP denied Mr. Warnell equal opportunity, respect, consideration, promotion, access to upward opportunity, fair and truthful evaluation, equal pay/salary and/or bonuses compared to his white co-workers, even those with far lesser experience and work product or performance.

11. BP subjected Mr. Warnell to hostile work environment and management with their continuing harm of discrimination based primarily on race.

12. Mr. Warnell noticed that he was treated far less favorably than his white coworkers, even those whose performance and work product were substandard. BP would give false "superior" ratings to low performing white workers to insure the jobs of the whites remained secure; but would give falsely "negative" ratings and rankings to African Americans like Mr. Warnell even though they out performed whites who were given better ratings/performance rankings.

13. Mr. Warnell complained internally of the discriminatory treatment he got that was far inferior to the more favorable treatment that his white co-workers go. Mr. Warnell pointed out the inconsistent performance evaluation and other work conditions to BP's HR, supervisors, etc.

14. Because Mr. Warnell engaged in the protected activity of complaining about the disparate, discriminatory hostile treatment BP directed against him, BP retaliated against Mr. Warnell, treating him even worse with false accusations, falsely negative evaluations, negative rankings designed to insure that Mr. Warnells' bonuses were less than his white co-workers, labeling him a "threat," and targeting him for wrongful termination, etc.

15. BP's discriminatory and hostile management and animus against Mr. Warnell was not limited to just one or two isolated events or occurrences, but the harm BP intentionally directed against him and continuous and intended to be such.

16. BP placed retaliatory and falsely negative write-ups, evaluations, rankings, and/or reports in Mr. Warnell's personnel file with the express intent to adversely affect, sabotage, block his professional mobility within BP and with other companies such as Marathon.

17. BP placed retaliatory and falsely negative write-ups, evaluations, rankings, and/or reports in Mr. Warnell's personnel file with the express intent to adversely affect, sabotage, diminish, limit his compensation, assignments, job positions, and/or bonuses within BP and with other companies such as Marathon.

18. BP retaliated against Mr. Warnell with a non-performance based demotion from an essential position to a non-essential position in advance of the Marathon official takeover so as to negatively impact Mr. Warnell's work standing with Marathon.

19. BP placed retaliatory and falsely negative performance notice in Mr. Warnell's personnel file with the express intent that this negative performance notice not only plague Mr. Warnell's employment experience within BP, but with BP's express intent that it follow Mr. Warnell into Marathon.

20. BP again used the mid-year evaluation in 2012 to target Mr. Warnell, give him a falsely negative evaluation and label him as a "threat" because Mr.

Warnell exercised his protected rights to complain about discrimination and unlawful workplace disparities or hostile work environment.

21. BP also targeted and retaliated against Mr. Warnell in effort to force him out o the company because he was viewed as a "problem," because BP gets rid of people who stand against racism, bigotry, unfair treatment of themselves or others.

22. Other workers would approach Mr. Warnell for advice on what to do about the discriminatory and unfair treatment BP was subjecting them to as well. BP took steps to threaten or warn one or more of these workers that they are not to talk to Mr. Warnell unless they wanted to be headed to termination like Warnell was targeted for.

23. BP passed over Mr. Warnell for promotion and sought to insure that he had greatly diminished or virtually no chance or opportunity for promotion, advancement, or more favored lateral movement.

24. In continued retaliatory and hostile animus against Mr. Warnell, BP admitted that its 2012 negative "Notice" was intended to follow him into Marathon so that any time he applied for or sought positions within BP and later with Marathon, that negative notice in his file would be considered and have adverse impact on his application efforts.

25. BP subjected Mr. Warnell to discrimination, retaliation, hostile work environment in effort to force him out of BP and/or develop a pretextual excuse to terminate him by subjecting him to oppressive micromanaging and hostile management that his white co-workers were not.

26. BP forced upon Mr. Warnell far more stringent and almost impossible work expectation/goals/assignments that were not imposed upon his white co-workers.

27. BP subjected Mr. Warnell to far more stringent performance standards than it did his white co-workers.

28. BP refused to give Mr. Warnell the positive rankings he earned with his work performance. Just prior to BP's sale to Marathon, BP did not conduct a proper evaluation, but rather issued Mr. Warnell a negative "official warning letter" that was to last 14 months.

29. BP has often used contrived PIP (Personal Improvement Plans) as means to target workers, especially minorities, for workplace harassment, discrimination and wrongful termination. BP wrongfully put Mr. Warnell on a PIP that it continued for ambiguous reasons, extending no less than three (3) times; all as effort to harass and retaliate against Mr. Warnell and not warranted by any true work performance or evaluation standard. His White coworkers were not similarly subjected.

30. BP's intentionally wrongful and negative evaluations had BP's intended outcome of diminishing Mr. Warnell's year-end bonuses compared to his white counterparts.

31. BP gave low performing whites positive evaluations and superior rankings to help the whites not only remain employed at BP, but also have more favorable outcome at Marathon upon the turnover as well. aboutEven though BP would at time offer seemingly business excuses for why Mr. Warnell was not afforded equal opportunity afforded his white counterparts, Mr. Warnell eventually learned the serious depth to which BP's discrimination against him and other minorities reached and that any excuses offered were mere pretext to perpetuate BP's culture of racism and discrimination with impunity.

32. Mr. Warnell was subjected to a hostile work environment that continued throughout his employment with coworkers and supervisors referring to him and other Blacks as niggers and other racial slurs, such as "stupid niggers," "dumb niggers," etc., whereas Mr. Warnell cannot be truthfully deemed stupid or dumb by any stretch of the imagination. He is a very well spoken, educated, classy, honorable, diligent professional worker and admirable human being. Sworn testimony to this fact has already been given in another wronged employee's legal case against BP.

33. One or more white BP workers and/or supervisor called Mr. Warnell a "token nigger," stating that BP just made Warnell a supervisor as its "token" nigger, adding that Warnell "had no real power;" thus, proving by BP's own admission that Warnell was not afforded the same respect, consideration, authority, opportunity that his white counterparts were afforded.

34. BP did not discipline the white BP leader who made this statement about Warnell. Nor did BP do anything to stop the attempts to alienate Warnell from his white co-worker Danysh who was known for talking to, advocating for, and treating fairly African Americans, just as he did whites.

35. BP concertedly worked to change positions for white workers to titles and positions that put them in favorable position for transition over to Marathon to increase their opportunities to be retained by Marathon, but took the more stable positions from Warnell and other African Americans to give to their white coworkers so that the African Americans may experience greater risk of not being retained by Marathon. BP particularly subjected Warnell to such demotion, unfavorable work conditions and assignments because BP sought to retaliate against Warnell for being so vocal against BP's discriminatory and hostile work environment

36. BP subjected Warnell not just to one nor a series of isolated incidences; rather, BP subjected Warnell and other African Americans to a continuing harm of discrimination and hostile work environment.

37. BP demoted, harassed, falsely accused, and retaliated against Warnell beause Warnell complained to BP about its discriminatory treatment and practices against him.

38. BP adversely subjected Warnell to unlawfully disparate treatment regarding his work assignments, work conditions, training, compensation, bonuses, benefits, and/or other conditions of work, but did not similarly mistreat Warnell's white co-workers.

39. BP also discriminated against Warnell based on his age, passing over him to give promotion and positions to younger, lesser experienced workers.

### E.
### CAUSES OF ACTION

41. Race Discrimination, and Retaliation Under Title VII of the Civil Rights Act.

42. Plaintiff DONALD WARNELL repeats and re-alleges paragraphs 1 through 39, as though fully set forth herein.

43. Defendant's actions demonstrate that it has engaged in age and race discrimination and a retaliatory practice with malice or with reckless indifference to Plaintiff's protected rights under federal age and race discrimination laws, particularly Age Discrimination in Employment Act and Title VII.

44. Plaintiff avers that Defendant's unlawful age and race discrimination and retaliatory actions against him violate the provisions and protections of state and federal employment laws and is in violation of Title VII of the Civil Rights Act of 1954, as amended by the Civil Rights Act of 1991, paragraph 703(a) which justifies an award, inter alia, of compensatory and punitive damages against Defendant.

45. Such discrimination and retaliation has caused Plaintiff to suffer damages, including wrongfully denied employment compensation, bonuses, promotion, fair and truthful evaluations and rankings, disciplinary/remedial actions, terms, opportunity and/or other conditions or work; compounded by emotional distress and diminished health as a result of BP's discrimination. Defendant committed these acts of discrimination and retaliation against Plaintiff with malice and reckless indifference to the rights of Plaintiff.

46. BP subjected Plaintiff to a hostile work environment in violation of Title VII.

47. As a direct result of Defendant's actions against Plaintiff, Plaintiff has been subjected to past and future pecuniary losses, emotional and economic pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-

pecuniary losses. These irreparable injuries and monetary damages are the result of Defendant's retaliatory practices.

## F.

## DEMAND FOR A JURY

48. Plaintiff demands a jury trial.

## G.

## DAMAGES

49. Plaintiff is entitled to an award of actual and compensatory damages in an amount that exceeds the minimum jurisdictional limits of this Court. These include his past and future loss of higher wages, raises, and or bonuses. Plaintiff also seeks an award of damages for his mental anguish and the loss he has suffered, continues to suffer.

50. Further, because the Defendant's acts and omissions were committed with malice and/or with reckless disregard of the consequences, they justify the imposition of exemplary damages in addition to the compensatory damages to which Plaintiff in entitled. A reasonable amount for exemplary damages in this case should take into consideration the need to deter future conduct of this type.

51. Plaintiff also seeks compensation for the out-of-pocket expenses, attorney's fees, and costs of Court he will have incurred in this action.

52. Plaintiff maintains that any damages awarded should be set by a jury after it hears all relevant and admissible evidence.

## H.

## PRAYER

53. For these reasons, Plaintiff prays that Defendant BP N.A. be cited to appear and answer herein and that this case be advanced for trial before a jury, and that on final hearing this Court grant the following relief:

   a) An award of reasonable attorney's fees and the cost and expenses related to the litigation of this claim;

   b) Loss of earnings sustained by Plaintiff from date of initial discrimination and retaliation to date of trial;

   c) Loss of earning and earning capacity reasonably anticipated to be suffered by Plaintiff in the future;

   d) Mental anguish, embarrassment, inconvenience, pain and suffering sustained by Plaintiff from the date of initial retaliation to the end of trial;

   e) Mental anguish, embarrassment, inconvenience, pain and suffering reasonably anticipated to be suffered by Plaintiff in the future;

   f) Actual damages suffered by Plaintiff;

   g) Punitive and exemplary damages; and

h) Pre-judgment interest at the highest rate allowed by law;

i) Post-judgment interest at the highest rate allowed by law;

j) A judgment against the Defendant for compensatory damages; and

k) Such other relief, legal or equitable, as may be warranted.

Respectfully submitted,
**LAW OFFICE OF KERYL L. DOUGLAS**

___/s/ Keryl L. Douglas___
**Keryl L. Douglas** (Attorney-In-Charge)
Fed. ID: 1075724
TBN: 24060880
5804 Bayou Bend Court
Houston, TX 77004
Telephone (713) 819-9945
Facsimile: (713) 589-6823

*ATTORNEY FOR PLAINTIFF*
*DONALD WARNELL*

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Donald R. Warnell, Sr.<br>3109 McArthur Drive<br>La Marque, TX 77568 | From: | Houston District Office<br>Total Plaza<br>1201 Louisiana, Suite 600<br>Houston, TX 77002 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2013-02737 | **Patricia Palacios Ware,** Investigator | (713) 651-4955 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

R.J. Ruff, Jr.,
District Director

JAN 3 1 2014 (Date Mailed)

Enclosures(s)

cc:   Taneka J. Downing, Counsel
BP AMERICA INC.
LEGAL: Labor, Employment & Employee Benefits Group
501 Westlake Park Blvd, MC 16.155
Houston, TX 77079

TWC - CIVIL RIGHTS DIV.
101 East 15th Street, Room 144-T
Austin TX 78778-0001

Keryl L. Douglas
ATTORNEY AT LAW
3730 Kirby, Ste. 1200
Houston, TX 77098